TERRENCE T. WHITAKER,

                    Petitioner,

v.

RANDALL HEPP,

                    Respondent.

Case No. 22-CV-1413-JPS

**ORDER**

## 1.    INTRODUCTION

On November 28, 2022, Petitioner Terrence T. Whitaker ("Petitioner") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. On April 12, 2023, Magistrate Judge William E. Duffin screened the petition under Rule 4 of the Rules Governing Section 2254 Proceedings and found that, although the petition presented "significant questions as to timeliness," it could proceed. ECF No. 5 at 1. The case was then reassigned to this branch of the Court and, on June 12, 2023, Respondent Randall Hepp[1] ("Respondent") moved to dismiss the petition. ECF No. 9. That motion is now fully briefed, and Petitioner has also filed a sur-reply,[2] which the Court has considered in reaching its

---

[1] The Clerk of Court is directed to substitute Randall Hepp for Brian Foster as the respondent on the docket. *See* ECF No. 10 at 1 n.1 ("Randall Hepp is now the warden of Waupun Correctional Institution, where Petitioner is in custody, and he is therefore automatically substituted as Respondent.") (citing Fed. R. Civ. P. 25(d)).

[2] Petitioner contends that Respondent was required to file a reply to his sur-reply, ECF No. 19, however, no reply to the sur-reply is required by either the scheduling order, ECF No. 5, the Federal Rules, or the Eastern District of Wisconsin Local Rules. Indeed, the Court need not have considered Petitioner's sur-reply, though it opted to do so. *See Walker v. Green Bay Corr. Inst. Health Servs.*

decision. ECF Nos. 10, 16, 17, 18. For the reasons explained below, Respondent's motion to dismiss will be granted, Petitioner's petition will be denied, and the action will be dismissed with prejudice.

**2.  LEGAL STANDARD**

State criminal convictions are generally considered final. Review may be had in federal court only on limited grounds. To obtain habeas relief from a state conviction, 28 U.S.C. § 2254(d)(1) (as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA")) requires the petitioner to show that the state court's decision on the merits of his constitutional claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Brown v. Payton*, 544 U.S. 133, 141 (2005). The burden of proof rests with the petitioner. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2011)). The relevant decision for this Court to review is that of the last state court to rule on the merits of the petitioner's claim. *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006) (citing *McFowler v. Jaimet*, 349 F.3d 436, 446 (7th Cir. 2003)).

**3.  RELEVANT BACKGROUND**

In 2010, Petitioner pleaded no contest to the charge of attempted first-degree intentional homicide following a drive-by shooting.[3] *State v.*

---

*Unit*, No. 16-C-1331, 2018 WL 3118298, at *2 (E.D. Wis. June 25, 2018) (explaining that there is no requirement to consider sur-replies where they are not authorized by rule and the litigant did not seek leave to file a sur-reply).

[3]*State of Wisconsin v. Terrence T. Whitaker*, Fond du Lac Cnty. Case No. 2009CF000165,
https://wcca.wicourts.gov/caseDetail.html?caseNo=2009CF000165&countyNo=20

*Whitaker*, 970 N.W.2d 576, 2021 WL 5618548, ¶ 2 (Wis. Ct. App. Dec. 1, 2021). Petitioner was sentenced to twenty years of initial confinement and five years of extended supervision, ECF No. 1 at 2, and his judgment of conviction was entered on May 17, 2010, ECF No. 10-1 at 16. Petitioner filed a "Notice of intent to pursue post-conviction relief" with the circuit court on May 20, 2010. *Id.*; ECF No. 1 at 4. However, Petitioner filed nothing further in the circuit court or the Wisconsin Court of Appeals before the deadline for a direct appeal, and in November 2010, he requested that his postconviction counsel close his file and send the contents of the file to him. ECF No. 1 at 5; *Whitaker*, 2021 WL 5618548, ¶ 2.

Approximately nine years later, on September 12, 2019, Petitioner moved for postconviction relief in Wisconsin circuit court under Wis. Stat. § 974.06. ECF No. 10-1 at 14; *Whitaker*, 2021 WL 5618548, ¶¶ 1, 3. In that motion, he challenged "his arrest, search and seizure, lack of probable cause that he committed a crime, suppression of evidence by the State, and the State's use of testimony 'known to it to be perjured.'" *Whitaker*, 2021 WL 5618548, ¶ 3. The circuit court held a hearing on the motion on December 23, 2019. ECF No. 10-1 at 13–14. At the hearing, Petitioner "offered additional grounds for relief and elaborated on some of his previously stated claims." *Whitaker*, 2021 WL 5618548, ¶ 4. Specifically,

> [h]e argued that he pled no contest to an illegal charge and his sentence was invalid, his trial counsel were ineffective because they never provided him with all of the discovery materials, he wanted to go to trial but his trial counsel coerced him into entering a no contest plea, and evidence about the trajectory of the bullet fired in the drive-by shooting did not

---

&index=0&mode=details (last visited Jan. 25, 2024); *see also* ECF No. 10-1 at 2, 16–17 (copy of state court docket sheet).

support an attempted first-degree intentional homicide charge.

*Id.* The circuit court denied the motion, concluding that Petitioner's "no contest plea was properly entered and had an adequate factual basis, and any additional information [Petitioner] learned after his conviction did not change the legality of his plea or his admission to the factual basis for it." *Id.*, ¶ 5.

Petitioner appealed the circuit court's denial of his § 974.06 motion to the Wisconsin Court of Appeals. *Id.*, ¶ 1. As pertinent to Petitioner's § 2254 petition, the Wisconsin Court of Appeals recounted that Petitioner argued at his motion hearing before the circuit court "in a conclusory fashion that trial counsels' failure to . . . share 'full discovery' 'shows the definition of ineffective assistance of counsel.'" *Id.*, ¶ 9. The Wisconsin Court of Appeals held that Petitioner "offered no facts or argument satisfying the two prongs of ineffective assistance of counsel," and affirmed the circuit court's denial of the motion on that basis. *Id.* Before the Wisconsin Court of Appeals, Petitioner also "allege[d] a *Brady* [*v. Maryland*, 373 U.S. 83 (1963)] violation." *Id.*, ¶ 13. However, because "he did not allege any facts in support of this argument in his circuit court motion or at the motion hearing,"[4] the Wisconsin Court of Appeals declined to address the issue for the first time on appeal. *Id.* (citing *State v. Huebner*, 611 N.W.2d 717, ¶ 10 (Wis. 2000)). The Wisconsin Court of Appeals ultimately affirmed the circuit court's denial of Petitioner's § 974.06 motion. *Id.*, ¶ 16. Petitioner

---

[4]Contrary to the Wisconsin Court of Appeals' account, Petitioner contends that he did argue the *Brady* violation at his December 23, 2019 hearing on the September 12, 2019 Wis. Stat. § 974.06 motion. ECF No. 16 at 7. There are therefore significant questions as to whether Ground Two is exhausted. However, because the Court denies the petition on timeliness grounds, it need not conduct an exhaustion analysis.

sought review with the Wisconsin Supreme Court, which denied his petition for review on April 13, 2022. *State v. Whitaker*, 995 N.W.2d 98 (Wis. 2022).

The instant § 2254 petition followed. Petitioner raises three grounds for relief. First, he argues "[l]ack of probable cause that . . . attempted first degree intentional homicide was comitted [sic]" on the basis that the district attorney failed to name the intended victim ("Ground One"). ECF No. 1 at 12–14.

Second, he raises a violation of *Brady*, 373 U.S. 83 ("Ground Two"). *Id.* at 14. In support of Ground Two, Petitioner provides the following facts. The initial evidence collection for the drive-by shooting was conducted on June 10, 2009. *Id.* At that time, Petitioner contends that he was charged with fourteen counts of first-degree reckless endangerment of safety and discharging a firearm towards a vehicle (which were ultimately dismissed on the district attorney's motion). *Id.* at 17; ECF No. 10-1 at 1–2. However, six days later, on June 16, 2009, the operator of the targeted vehicle told police that he had located "another bullet hole" inside his vehicle's dashboard that was not there prior to the drive-by shooting. ECF No. 1 at 14; ECF No. 16-1 at 1. After recovery of the bullet, the district attorney added the attempted first-degree intentional homicide charge. ECF No. 1 at 17.

When Petitioner received his discovery file from his postconviction counsel in November 2010, the police affidavit in support of an application for a warrant to search the targeted vehicle for the bullet was not included. *Id.* Petitioner only received the affidavit when his § 974.06 postconviction attorney sent him a copy of his case file and he analyzed it again for potential new documents. *Id.* at 19; ECF No. 16 at 6; *see also* ECF No. 16-1 at

1 (copy of the affidavit). The affidavit states that "it is possible that additional charges are being considered after the trajectory of the bullets have been determined. The trajectory of the bullets were [sic] not determined at the initial evidence collection." ECF No. 16-1 at 1. Petitioner avers that the evidence of the bullet in the dashboard and the fact that the bullet trajectory was the basis for adding the attempted first-degree intentional homicide charge were not disclosed to his trial attorney in violation of *Brady*, 373 U.S. 83. ECF No. 1 at 18.

Finally, Petitioner argues a "[l]ack of subject matter jurisdiction" ("Ground Three"). ECF No. 1 at 16. In support of Ground Three, Petitioner contends that at a November 2009 hearing on his motion to dismiss the attempted first-degree intentional homicide charge, the circuit court stated that there was "nothing . . . to support" the district attorney's statement that Petitioner was "going after one particular person who he wanted to kill." *Id.* Nonetheless, the circuit court denied the motion to dismiss and allowed the State to proceed with the charge. *Id.* at 20; *see also* ECF No. 10-1 at 17–18.

4. ANALYSIS

   4.1    The Parties' Arguments

Respondent moves to dismiss the petition on the basis that it is "untimely by over a decade." ECF No. 10 at 3. In response, Petitioner primarily argues that the doctrines of statutory and equitable tolling should apply to salvage the untimeliness of his petition. ECF No. 16. He contends that he did not receive the document supporting his grounds for relief—the affidavit in support of the warrant to search the targeted vehicle for the bullet that explains "how [the district attorney] came up with [the] charge of attempted murder"—until December 4, 2019. *Id.* at 5–6, 9. Petitioner had never seen this purported "newly discovered evidence" before, *id.* at 6, and

it was not raised during the circuit court's November 2009 hearing on Petitioner's motion to dismiss the attempted first-degree intentional homicide charge based on "lack of evidence supporting [the] charge and no victim name attached to said charge," *id.* at 7.

Had this evidence been raised at the November 2009 motion hearing, Petitioner argues that the motion would have been granted. *Id.* at 10. At the hearing, Petitioner contends that the district attorney "never named a victim, nor did he tell the Judge . . . where, why, or how . . . he came up with the attempted murder charge." *Id.* at 7. Instead, the district attorney informed the circuit court that "it's the [S]tate's theory that [Petitioner] was gunning for one particular person in the crowd. We believe that's the inference under the circumstances . . . ." *Id.* Specifically as it pertains to the allegedly newly discovered police affidavit, Petitioner avers that the district attorney never told the circuit court that the attempted first-degree intentional homicide charge "c[ame] from the bullet trajectory that was not determined at the initial evidence collection," despite the fact that the circuit court asked him where the charge came from. *Id.*; ECF No. 18 at 5. Alternatively, Petitioner argues that he meets the actual innocence exception to untimely petitions for the same reasons. ECF No. 16 at 10.

In reply, Respondent argues that "[e]ven assuming that it is true that the affidavit in question . . . was not included in the discovery that [Petitioner] received from his postconviction counsel in 2010," and "even assuming that it is true that [Petitioner] did not see the affidavit until December 4, 2019, he has given no explanation for waiting until 2019 to make any challenge at all his to his 2010 conviction." ECF No. 17 at 5 (citing ECF No. 16-1 at 1, ECF No. 1 at 5). In other words, Respondent asserts that Petitioner has not "exercised diligence to discover any factual predicates

that might exist for habeas relief in the nine years following his conviction." *Id.* Moreover, Petitioner did not obtain the affidavit prior to filing his § 974.06 motion; instead, he obtained it in the time between filing the motion and the motion hearing before the circuit court. *Id.*

In his sur-reply, Petitioner contends that he chose to wait until he had served half of his sentence to seek a sentence modification so that he could point to the lack of violent jail conduct to support his request for relief. ECF No. 18 at 7. Once Petitioner became aware of the missing document, he argues that he diligently and promptly sought relief. *Id.* at 7–8. He asserts that the affidavit is the basis for all three of his grounds for relief. *Id.* at 4.

### 4.2   Timeliness of the Petition Under Section 2244(d)(1)(A)

Preliminarily, and although Petitioner appears to concede that his petition is untimely under § 2244(d)(1)(A), the Court agrees with Respondent that the petition is untimely by more than a decade under § 2244(d)(1)(A). A state prisoner in custody pursuant to a state court judgment has one year from the date "the judgment became final" to seek federal habeas relief. 28 U.S.C. § 2244(d)(1)(A). For petitioners who do not pursue direct review all the way to the U.S. Supreme Court, like Petitioner, "the judgment becomes final . . .when the time for pursuing direct review in [the U.S. Supreme] Court, or in state court, expires." *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012).

Petitioner filed a notice of intent to pursue post-conviction relief on May 20, 2010. ECF No. 10-1 at 16; ECF No. 1 at 4. However, he "did not follow through on a direct appeal." *McCradic v. Pollard*, No. 11-C-182, 2011 WL 3736939, at *1 (E.D. Wis. Aug. 24, 2011). Thus, his conviction became final sixty days after "the later of the service of the transcript or circuit court

case record." *Id.*; Wis. Stat. § 809.30(2)(h). The circuit court case record was served on July 19, 2010, and the last transcript was served on August 19, 2010. ECF No. 10-1 at 15–16. Petitioner's judgment therefore became final on October 18, 2010, and his November 28, 2022 habeas petition is untimely.

Generally, there are two circumstances in which courts will consider an untimely habeas petition: if either statutory or equitable tolling applies, or if the Petitioner is able to meet the "actual innocence" exception. *See Gladney v. Pollard*, 799 F.3d 889, 894 (7th Cir. 2015). Because Petitioner asserts that he meets both circumstances, the Court takes up each in turn.

### 4.3 Statutory and Equitable Tolling

Section 2244(d)(1)(D) provides for statutory tolling, allowing AEDPA's one-year limitation period to run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." In turn, "[u]nder equitable tolling principles, a petitioner need not count the time during which he (1) pursues his rights diligently, and (2) 'some extraordinary circumstance stood in his way and prevented timely filing.'" *Gladney*, 799 F.3d at 894–95 (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)). Following the Seventh Circuit's holding in *Gladney*, if the Court accepts Petitioner's argument that his December 4, 2019 discovery of the affidavit is the operative commencement date of the limitations period, the November 28, 2022 petition would be timely, given that the Wisconsin Supreme Court denied review on April 13, 2022. *Id.* at 895 (post-conviction motion filed before discovery of factual predicate of claim "was enough to stop the clock until the Wisconsin Supreme Court denied review").

Both statutory and equitable tolling require Petitioner to show that he exercised due diligence in pursuing his rights. *Id.* at 898 (describing "the

threshold diligence requirement of equitable tolling and § 2244(d)(1)(D)"). "The diligence required for equitable tolling purposes is reasonable diligence . . . not maximum feasible diligence." *Carpenter v. Douma*, 840 F.3d 867, 870 (7th Cir. 2016) (quoting *Holland*, 560 U.S. at 653). "Thus, to qualify for equitable tolling, [the petitioner] ha[s] to demonstrate that he was reasonably diligent in pursuing his rights throughout the limitations period." *Id.*; *see also Obriecht v. Foster*, 727 F.3d 744, 750 (7th Cir. 2013) ("'Equitable tolling excuses a[n un]timely filing when the [petitioner] could not, despite the exercise of reasonable diligence, have discovered all the information he needed in order to be able to file his claim on time' . . . . Thus, [the petitioner] must demonstrate that during . . . years between his AEDPA deadline and the time he filed his petition in state court, he was diligently pursuing his claims.") (quoting *Johnson v. McCaughtry*, 265 F.3d 559, 565 (7th Cir. 2001)).

Petitioner has not met this threshold, and so the untimeliness of his petition is not saved on grounds of tolling. Petitioner chose not to directly appeal his conviction, and he did not seek postconviction relief for almost a decade. *Cf. Munchinski v. Wilson*, 694 F.3d 308, 332 (3d Cir. 2012) (finding that the petitioner was reasonably diligent because "the diligence inquiry is contextual . . . [and the petitioner] made almost every effort to seek timely post-conviction relief in both the state and federal systems"); *see also Moreland v. Eplett*, 18 F.4th 261, 271 (7th Cir. 2021) ("Reasonable diligence requires that [the petitioner must] prove he diligently tried to protect his rights over time . . . ."). Petitioner had concerns beginning as early as November 2009 that the district attorney did not have sufficient evidence to support the attempted first-degree intentional homicide charge; indeed, he filed a motion to dismiss before the circuit court on that basis. He

Page 10 of 17
Case 2:22-cv-01413-JPS   Filed 01/29/24   Page 10 of 17   Document 20

continues to assert that the information that the district attorney supplied to the circuit court in November 2009 was insufficient to support the charge. Thus, he could have appealed or sought timely postconviction relief on the factual predicates for at least Grounds One and Three, but he did not. *See Lloyd v. VanNatta*, 296 F.3d 630, 633 (7th Cir. 2002) (holding, with respect to allegedly missing documents, that "[petitioner] was present at his trial and knew the basis on which he could have asserted prosecutorial misconduct").

When Petitioner did choose to seek postconviction relief, his admitted desired relief was "a sentence modification d[ue] to his very harsh sentence and given the fact[] he had no prior criminal history of any sort." ECF No. 18 at 6. Petitioner waited to seek this relief "until he served [half] his time . . . and also up until that point he had no violent jail conduct history," which he felt gave him "a chance to get his sentence modified." *Id.* Fortuitously, after Petitioner sought that modification in the form of a § 974.06 motion, *see id.*, he received his case file again from his new postconviction attorney and discovered the police affidavit. This is not a case in which Petitioner worked tirelessly to obtain a copy of his case file but was refuted at every turn. *See, e.g.*, *Socha v. Boughton*, 763 F.3d 674, 686 (7th Cir. 2014) (finding that the petitioner was reasonably diligent because he attempted to seek relief "[b]eginning long before his one-year period expired and continuing at regular intervals until he succeeded").

Thus, under principles of statutory and equitable tolling, Petitioner did not act diligently to pursue his claims. Even if he had, the missing police affidavit does not constitute an "extraordinary circumstance" for purposes of equitable tolling. *See Gladney*, 799 F.3d at 894–95 (quoting *Holland*, 560 U.S. at 649). "An 'extraordinary circumstance' is something 'beyond the

applicant's control, that prevents timely filing; simple legal errors, such as ignorance of the federal deadline, do not suffice.'" *Moreland*, 18 F.4th at 271 (citing *Perry v. Brown*, 950 F.3d 410, 412 (7th Cir. 2020)).

It is true that a petitioner's "[i]nability to access vital papers" is one potentially extraordinary circumstance for equitable tolling purposes. *Schmid v. McCauley*, 825 F.3d 348, 350 (7th Cir. 2016) (citing *Socha*, 763 F.3d 674 and *Estremera v. United States*, 724 F.3d 773, 777 (7th Cir. 2013)); *see also Morgan v. Brookhart*, No. 22 C 2330, 2023 WL 2402966, at *8 (N.D. Ill. Mar. 8, 2023) ("[E]quitable tolling has been recognized by district courts in this circuit 'where, despite due diligence, petitioners were unable to obtain *vital information* bearing on their claims because of exceptional circumstances outside of their control.'") (quoting *United States ex rel. Zapada v. Lemke*, 13 C 6987, 2014 WL 1647126, at *5 (N.D. Ill. Apr. 23, 2014)) (emphasis added). However, as to all of Petitioner's grounds for relief, the sequence of events that Petitioner describes does not convince the Court that he was unable to access the police affidavit much earlier, had he only asked for another copy of his case file earlier. *Cf. Socha*, 763 F.3d at 684 (extraordinary circumstances present where "[the petitioner] had been begging . . . for the file" for some time).

The Court further finds that the police affidavit is not "vital" for purposes of equitable tolling, nor is it a factual predicate for Petitioner's grounds for relief under the statutory tolling analysis. As explained, Petitioner knew the facts giving rise to Grounds One and Three at the time of his November 2009 motion hearing. *See Cabagua v. Cooper*, No. 19-CV-881-PP, 2022 WL 597255, at *4 (E.D. Wis. Feb. 28, 2022) ("The [newly discovered DNA, medical, and police] reports might have constituted relevant facts for this claim. But the petitioner had the factual predicate for

Page 12 of 17
Case 2:22-cv-01413-JPS    Filed 01/29/24    Page 12 of 17    Document 20

a claim that insufficient evidence supported his conviction at the moment the clerk entered judgment.").

With respect to Ground Two, "[s]peculation about what the police may have thought early in their investigation is some distance from knowledge that the state had, yet concealed, material exculpatory evidence." *Johnson v. McBride*, 381 F.3d 587, 589 (7th Cir. 2004) (citing *United States v. Agurs*, 427 U.S. 97, 108–10 (1976) and *Mahaffey v. Schomig*, 294 F.3d 907, 917 (7th Cir. 2002)). The police affidavit itself does not disclose the bullet trajectory; it therefore "does not suggest anything other than a painstaking investigation by the police." *Id.* Nor does it conclusively establish that the bullet trajectory was *the* basis to add the attempted first-degree intentional homicide charge. ECF No. 16-1 at 1 ("[I]t is *possible* that additional charges are being considered after the trajectory of the bullets have been determined.") (emphasis added). It amounts to nothing more than speculation based on a police officer's belief in applying for a search warrant.

Additionally, and without "[a]llowing consideration of the merits of time-barred claims to creep into the equitable tolling analysis," because the affidavit does not itself contain the bullet trajectory—let alone one that would undermine a charge for attempted first-degree homicide—the Court fails to see how the affidavit would be exculpatory for purposes of a *Brady* claim. *Johnson*, 381 F.3d at 591–92 (quoting *Rouse v. Lee*, 339 F.3d 238, 251 (4th Cir. 2003)). This is particularly so given that Petitioner argued before the circuit court at his December 23, 2019 hearing on the September 12, 2019 Wis. Stat. § 974.06 motion that evidence of the bullet trajectory itself "did not support an attempted first-degree intentional homicide charge," which argument the circuit court rejected on the basis that "[Petitioner's] no

contest plea . . . had an adequate factual basis." *Whitaker*, 2021 WL 5618548, ¶¶ 4, 5. The affidavit in support of the search warrant adds nothing in the face of evidence of the actual bullet trajectory, which the state courts found to be sufficient. For all of these reasons, Petitioner is not eligible for either statutory or equitable tolling.

### 4.4 Actual Innocence

Alternatively, as earlier noted, an untimely petition may be saved on grounds of actual innocence. Petitioner's final argument, ECF No. 16 at 10, is that he qualifies for the actual innocence exception which, if proved, removes the impediment of the "expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). "A petitioner may claim actual innocence for the purposes of equitable tolling, even if his conviction was the result of a plea." *Connolly v. Howes*, 304 F. App'x 412, 417 (6th Cir. 2008) (as to no contest plea) (citing *Bousley v. United States*, 523 U.S. 614, 623 (1998) and *Waucaush v. United States*, 380 F.3d 251, 258 (6th Cir. 2004)). "However, '[w]ithout any new evidence of innocence, even a concededly meritorious constitutional violation is not in itself sufficient' to reach the merits of a time-barred claim.'" *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)). The petitioner must demonstrate that, in light of the new evidence, "it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt." *Id.* (citing *Schlup*, 513 U.S. at 327). "The actual innocence gateway is narrow," and the petitioner carries a "heavy burden." *Gladney*, 799 F.3d at 896, 899. "To demonstrate innocence so convincingly that no reasonable jury could convict, a prisoner must have documentary, biological (DNA), or other powerful evidence . . . ." *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005).

While applying the actual innocence standard where a petitioner pleaded no contest "can be difficult," and the record before the Court is lacking, for the reasons already explained, the police affidavit is not evidence of innocence. *Hanson v. Haines*, No. 13-CV-01145, 2014 WL 4825171, at *1 (E.D. Wis. Sept. 26, 2014) (citing *Bousley*, 523 U.S. at 631); *see also Morgan v. Brookhart*, No. 22 C 2330, 2023 WL 2402966, at *12 (N.D. Ill. Mar. 8, 2023) ("[The petitioner's] theories as to how the evidence *could be* affected by the FBI's statistical models, however, do not satisfy *Schlup*'s stringent, actual-innocence standard. None of the information he presents to this court exculpates him from the crime . . . .") (emphasis added). As noted, the police affidavit does not disclose the bullet trajectory and amounts to mere speculation of what the police sought to discover with a search warrant. *See Johnson*, 381 F.3d at 589. Moreover, if anything, the affidavit suggests that the bullet trajectory ultimately did support the addition of the attempted first-degree homicide charge. In other words, the affidavit tends to bolster, rather than undermine, the charge, particularly given the state courts' rejection of Petitioner's argument that the actual bullet trajectory did not support the charge. It does nothing to suggest that Petitioner is, in fact, innocent of attempted first-degree homicide.

Petitioner's delay in seeking any sort of postconviction relief also "weighs against the reliability of his innocence claim." *Hanson*, 2014 WL 4825171, at *1. As already explained, Petitioner made no effort over the last decade to seek new copies of his case file to review and search the discovery anew. For purposes of the demanding *Schlup* actual innocence standard, evidence that "'was always within the reach of [the petitioner's] personal knowledge or reasonable investigation' . . . does not constitute 'new' evidence sufficient to overcome the AEDPA's statute of limitations based

on actual innocence." *Pasco v. Dir., Tex. Dep't of Crim. Just., Corr. Insts. Div.*, No. 3:19-CV-1237-G-BH, 2022 WL 1230069, at *4 (N.D. Tex. Mar. 28, 2022) (citing *Schlup*, 513 U.S. 298; *Hancock v. Davis*, 908 F.3d 387, 389 & n.1 (5th Cir. 2018); and *Plata v. Davis*, No. 18-41152, 2019 WL 11276454, at *1 (5th Cir. Dec. 5, 2019)). Thus, Petitioner's actual innocence claim is not successful, and his petition will be denied as untimely.

5.  **CONCLUSION**

For the reasons discussed herein, Petitioner's § 2254 petition is untimely, and the Court will grant Respondent's motion to dismiss. Under Rule 11(a) of the Rules Governing Section 2254 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the [habeas] applicant." To obtain a certificate of appealability, Petitioner must make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the amended petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). For the reasons discussed above, no reasonable jurists could debate whether Petitioner is eligible for statutory or equitable tolling, or whether he has made a successful actual innocence claim, in order to salvage his untimely petition. The Court will, therefore, deny Petitioner a certificate of appealability.

Accordingly,

**IT IS ORDERED** that the Clerk of Court is **DIRECTED** to substitute Randall Hepp for Brian Foster as the respondent on the docket;

**IT IS FURTHER ORDERED** that Respondent's motion to dismiss, ECF No. 9, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Petitioner's petition for a writ of habeas corpus, ECF No. 1, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**; and

**IT IS FURTHER ORDERED** that a certificate of appealability be and the same is hereby **DENIED**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 29th day of January, 2024.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id.* A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.